[S. F. No. 19433. In Bank. Dec. 21, 1956.]

THE BOARD OF EDUCATION OF THE SAN FRAN-
CISCO UNIFIED SCHOOL DISTRICT et al., Re-
spondents, v. JOHN W. MASS, Appellant.

Lawrence Speiser for Appellant.

Dion R. Holm, City Attorney, and Irving G. Breyer for
Respondents.

GIBSON, C. J.—This case involves the constitutionality of section 12604 of the Education Code which provides that any employee of a school district who fails or refuses on any ground whatsoever to answer questions put to him by a legislative committee relating to specified matters, including past or present knowing membership in the Communist Party, shall be guilty of insubordination and of violating the section and shall be dismissed from his employment in the manner provided by law.[1]

In 1950 defendant, an instructor at the City College of San Francisco, signed a loyalty oath required of school employees in which he stated that he "had been a member of the Communist Party from the fall of 1947 to the fall of 1949" but that he was no longer connected with it.[2]

---

[1]Section 12604 of the Education Code, as it was enacted in 1953, read: "It shall be the duty of any employee of any school district who may be subpenaed by a United States Congressional Un-American Activities Committee or a subcommittee thereof or a California Legislative Un-American Activities Committee or a subcommittee thereof or any other committee or subcommittee of the United States Congress or the California Legislature or of either house of either thereof to appear before said committee or subcommittee and specifically to answer under oath a question or questions propounded by any member or counsel of the committee or subcommittee relating to:

"(a) Present personal advocacy by the employee of the forceful or violent overthrow of the Government of the United States or of any state or political subdivision.

"(b) Present knowing membership in any organization which, to the knowledge of such employee, advocates the forceful or violent overthrow of the Government of the United States or of any state or political subdivision.

"(c) Past knowing membership at any time since September 10, 1948, in any organization which, to the knowledge of such employee, during the time of the employee's membership advocated the forceful or violent overthrow of the Government of the United States or of any state or political subdivision.

"(d) Past knowing membership of such employee in the Communist Party at any time since September 10, 1948.

"(e) Present knowing membership of such employee in the Communist Party.

"Any employee who fails or refuses to answer under oath on any ground whatsoever any such question propounded by any member or counsel of any such committee or subcommittee shall be guilty of insubordination and guilty of violating this section and shall be suspended and dismissed from his employment in the manner provided by law."

(Sections 12600-12607, commonly known as the Dilworth Act, were added to the Education Code in 1953. In 1955 section 12604 was amended by changing the dates from September 10, 1948, to October 3, 1945, and a new subdivision (f), which is not involved here, was also added.)

[2]The oath required by chapter 8 of the Government Code in 1950 was set forth in section 3103 of that code and was the same in all

On December 2, 1953, pursuant to subpoena, defendant appeared as a witness before a subcommittee of the House of Representatives Committee on Un-American Activities. He refused to answer a number of questions put to him by the committee, basing his refusal on the ground of privilege against self-incrimination under the Fifth Amendment to the federal Constitution. In particular he declined to state whether he had been a member of the Communist Party since he signed the loyalty oath, whether he was presently a member of the Communist Party, and whether his statement in the loyalty oath was true when he made it.

The superintendent of schools filed with the board of education a verified statement charging defendant with unprofessional conduct, unfitness for service, insubordination and disobedience of the school laws of the state because of his refusal to answer the questions propounded to him by the committee. A transcript of the hearing before the committee was attached to and made a part of the charges.

At a meeting of the board held on December 8, 1953, to consider what action should be taken, defendant offered to answer under oath any questions the board wished to ask him with respect to whether he had been a member of the Communist Party since 1950, whether he told the truth when he signed the loyalty oath, and whether to his knowledge any employee of the San Francisco School District was a member of the Communist Party. The offer was refused. Defendant's attorney stated that defendant's conduct before the committee was based upon the attorney's opinion that, if defendant answered a question regarding his affiliation with the Communist Party, he would waive any right to claim the privilege

---

material respects as the one which, since 1953, has been required by chapter 8 in the form appearing in section 3 of article XX of the California Constitution. On the printed form of oath, in the place reserved for exceptions to the statement that during the preceding five years defendant had not been a member of any organization that advocated the overthrow of the government by force or violence, he wrote: ''To the best of my knowledge and belief, no exceptions (Over).'' On the back of the form he wrote: "Since it has been alleged by certain persons that the Communist Party and the California Labor School fall in the category described in the oath I am now taking, I feel compelled to state that I had been a member of the Communist Party from the fall of 1947 to the fall of 1949 and of the California Labor School from the fall of 1946 to the summer of 1950. However, I am definitely no longer connected with either of the above groups. Finally, at no time was I aware of nor did I hear of any person or group within these two organizations advocating either the overthrow of the government by force or any other activity described in the oath."

against self-incrimination with respect to questions concerning membership of other persons in the Communist Party. The board's refusal to accept the testimony offered by defendant or to consider the reasons for his conduct apparently resulted from its belief that under section 12604 of the Education Code, it was compelled to dismiss him and had no discretion in the matter.

Defendant was suspended and notified of the board's intention to dismiss him. He demanded a hearing, and the board elected to file this action in the superior court pursuant to section 13529 of the Education Code which provides that the board shall have the option either to rescind its action or file a complaint in the superior court, setting forth the charges against the employee.[3]

A copy of the superintendent's charges, including a transcript of defendant's testimony before the committee, was designated "Exhibit A" and attached to and made a part of the complaint. Defendant in his answer admitted that he had been asked the questions by the committee and that he had refused to answer them "on the basis of the Fifth Amendment." The evidence at the trial consisted of a transcript of the proceedings at the board meeting held on December 8, 1953. The court found that the charges were true and concluded that they constituted grounds for dismissal. On this appeal from the ensuing judgment, defendant's principal contention is that section 12604 of the Education Code is unconstitutional.

█ The State of California has the power to require teachers in our public schools, as a condition to continued employment, to give evidence with respect to matters bearing upon their fitness to teach. (See *Adler* v. *Board of Education,* 342 U.S. 485, 493 [72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472] ; *Steinmetz* v. *California State Board of Education,* 44 Cal.2d 816, 824 [285 P.2d 617] ; *Pockman* v. *Leonard,* 39 Cal. 2d 676, 687 [249 P.2d 267].) It has been established by legis-

[3]Section 13529 of the Education Code provides:
"When any employee who has been served with notice of the governing board's intention to dismiss him demands a hearing, the governing board shall have the option either (a) to rescind its action, or (b) to file a complaint in the superior court of the county in which the school district or the major part thereof is located, setting forth the charges against the employee and asking that the court inquire into the charges and determine whether or not the charges are true, and if true, whether or not they constitute sufficient grounds for the dismissal of the employee, under the provisions of this code, and for judgment pursuant to its findings."

lative findings and judicial decisions that the Communist Party is a continuing conspiracy against our government. (Ed. Code, § 12600, added by Stats. 1953, ch. 1632, § 1; Gov. Code, § 1027.5, added by Stats. 1953, ch. 1646, § 1; Internal Security Act of 1950, 64 Stats. 987, 50 U.S.C.A. § 781; Communist Control Act of 1954, 68 Stats. 775, 50 U.S.C.A. § 841; *Black* v. *Cutter Laboratories*, 43 Cal.2d 788, 800-806 [278 P.2d 905]; *Daniman* v. *Board of Education of City of New York*, 306 N.Y. 532, 540 [119 N.E.2d 373].) ▮ Loyalty on the part of public employees is essential to orderly and dependable government and is therefore relevant to fitness for such employment. ▮ A teacher may properly be required to disclose information relative to fitness and loyalty as a reasonable condition for obtaining or retaining public employment, even though the disclosure under some circumstances may amount to self-incrimination. See *Steinmetz* v. *California State Board of Education*, 44 Cal.2d 816, 824 [285 P.2d 617]; *Pockman* v. *Leonard*, 39 Cal.2d 676, 687 [249 P.2d 267]; *Christal* v. *Police Com.*, 33 Cal.App.2d 564, 567 et seq. [92 P.2d 416].)

In determining whether section 12604 of the Education Code is constitutional, we must consider the effect of the recent decision of the United States Supreme Court in *Slochower* v. *Board of Higher Education* (1956), 350 U.S. 551 [76 S.Ct. 637, 100 L.Ed. 692]. In that case a teacher was summarily dismissed from his position in accordance with a section of the city charter which provided that the term of employment of any city employee should terminate if, when called before any legislative committee, he refused to answer a question regarding his official conduct on the ground his answer would tend to incriminate him. The court held that the summary dismissal violated the constitutional requirement of due process, pointing out that the charter provision "operates to discharge every city employee who invoked the Fifth Amendment. . . . No consideration is given to such factors as the subject matter of the questions, remoteness of the period to which they are directed, or justification for exercise of the privilege. It matters not whether the plea resulted from mistake, inadvertence or legal advice conscientiously given whether wisely or unwisely. The heavy hand of the statute falls alike upon all who exercise their constitutional privilege, the full enjoyment of which every person is entitled to receive." (350 U.S. at p. 558.)

We understand the holding of the Slochower case to be that a public employee may be dismissed for invoking the privilege against self incrimination only if, after a full hearing in which he is afforded an opportunity to explain his reasons for claiming the privilege, it is determined that his refusal to answer is sufficient under the circumstances to warrant dismissal. The judgment involved here was rendered before the Slochower case was decided by the United States Supreme Court, and it is clear from the record that the parties and the trial court construed section 12604 of the Education Code as requiring the dismissal of an employee who refused to answer a question on the ground his answer might incriminate him, regardless of his reasons for claiming the privilege allowed by the Fifth Amendment.

Any construction which would require us to hold that section 12604 is unconstitutional should be avoided if possible (*Bodinson Mfg. Co.* v. *California Emp. Com.*, 17 Cal.2d 321, 326-327 [109 P.2d 935]), and we are of the opinion that the statute may be reasonably interpreted in a manner consistent with due process. ■ Section 12604, as we have seen, provides for the dismissal of an employee "in the manner provided by law," and we construe these words to mean that, before an employee may be found guilty of insubordination or dismissed for refusing to answer under the claim of privilege against self-incrimination, there must be a full hearing and a determination that his reasons for invoking the privilege are not sufficient. Factors of the type mentioned in the portion of the Slochower decision quoted above should, of course, govern the determination as to the sufficiency of the employee's reasons.

It is apparent that no consideration was given to defendant's reasons for invoking his constitutional right. The scope of inquiry was limited to a determination of whether he refused to answer the questions which were put to him by the committee. Such a hearing did not meet the requirements laid down in the Slochower case and contemplated by section 12604 of the Education Code, when properly construed, and a new trial must be had. We do not, of course, mean to suggest that, on retrial, the sufficiency of defendant's reasons for invoking the privilege is the only question which may be considered in determining whether his dismissal is warranted. Any matter germane to the charges filed against him would be open to inquiry.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

Traynor, J., and Schauer, J., concurred.

CARTER, J.—I concur in the judgment of reversal but I do not agree with the holding in the opinion prepared by the Chief Justice that the provisions of the so-called Dilworth Act here involved are constitutional. In *Slochower* v. *Board of Higher Education*, 350 U.S. 551 [76 S.Ct. 637, 100 L.Ed. 692], the Supreme Court of the United States squarely held that a law is unconstitutional which makes mandatory the dismissal of a government employee solely for relying on the privilege against self incrimination before a congressional committee, and that a discharge based on such a law violates the due process clause of the Fourteenth Amendment. The law involved in that case was section 903 of the New York City Charter. Such a law is involved here (Ed. Code, § 12604). In that case the court said: "As interpreted and applied by the state courts it (Section 903) operates to discharge every city employe who invokes the Fifth Amendment. In practical effect the questions asked are taken as confessed and made the basis of the discharge. . . . The heavy hand of the statute falls alike on all who exercise their constitutional privilege, the full enjoyment of which every person is entitled to receive. Such action falls squarely within the prohibition of *Wieman* v. *Updegraff* [344 U.S. 183 (73 S.Ct. 215, 97 L.Ed. 216)]."

While it is true that in *Steinmetz* v. *California State Board of Education*, 44 Cal.2d 816 [285 P.2d 617], this court upheld the provisions of this act which require discharge of an employee who refuses to answer certain questions propounded to him by the board which employs him, there is a clear distinction between such provisions and those here involved. This distinction was pointed out by the court in the Slochower case in the following language: "It is one thing for the city authorities themselves to inquire into Slochower's fitness but quite another for his discharge to be based entirely on events occurring before a federal committee whose inquiry was announced as not directed at 'the property, affairs, or government of the city, or . . . official conduct of city employees.' In this respect the present case differs materially from Garner, where the city was attempting to elicit information necessary to determine the qualifications of its employees. Here, the Board had possessed the pertinent information for 12 years,

and the questions which Professor Slochower refused to answer were admittedly asked for a purpose wholly unrelated to his college functions. On such a record the Board cannot claim that its action was part of a bona fide attempt to gain needed and relevant information.''

In this case, likewise, the board of education had the information about appellant's Communist Party membership in prior years. However, this case presents even a stronger factual situation than that presented in the Slochower case, because here the appellant had offered to answer the questions of the board of education with regard to his past Communist Party membership at the meeting of December 8, 1953, after appellant's appearance before the House Un-American Activities Committee. It can be said here, just as the United States Supreme Court said in the Slochower case: ''On such a record the Board cannot claim that its action was part of a bona fide attempt to gain needed and relevant information.''

The statute involved here (Ed. Code, § 12604) has even greater constitutional defects than the charter provision of the city of New York involved in the Slochower case (New York City Charter, § 903), because, under the Dilworth Act involved here, the employee must be discharged for refusing to answer any question relating to communism ''on any ground whatsoever,'' whereas, the New York charter provision involved in the Slochower case was restricted to cases only where the employee relied on the privilege against self incrimination. It should be apparent that even though our Education Code provides for the filing of charges, notice thereof and a hearing before the discharge becomes effective, such a hearing is a mere farce, since the end result is the foregone conclusion that the employee must be discharged because the statute here involved eliminates any defense whatsoever. Even though there is a hearing, there is nothing to be heard except whether the teacher did or did not refuse to answer a question for any reason whatsoever. No matter what his reason for refusing to answer may have been, the employee must be discharged under the Dilworth Act. The mere fact that in the Slochower case there was a summary dismissal, but here some procedural steps are required to be taken before the discharge is ordered, is a mere distinction without a difference.

With regard to the purpose of the Senate committee which the Supreme Court refers to in the Slochower case, the case at bar is also even a stronger one for the employee, as the court there stated: ''The investigation, conducted on a national

scale, related to subversive influences in the American educational system."

Here, there was no reference made by the House Un-American Activities Committee that it was interested in education at all. At the beginning of the hearing in San Francisco on December 1, 1953, at which appellant was interrogated, the chairman of the committee stated: ". . . It is the purpose of this investigation to ascertain the nature, extent, character, and objects of Communist infiltration in the Bay area where there is a great concentration of defense industry and where the headquarters of District No. 13 of the Communist Party are maintained. This investigation, unlike those conducted in the Territory of Hawaii and southern California, is not concentrated upon a single industry or enterprise. For the time being the work of the committee will be of a more general character." (Hearing Before the Committee on Un-American Activities of the House of Representatives, 83d Cong., 1st Sess., pt. 1, at 3056 [1953].)

The only other factual distinction between the two cases is the fact that Professor Slochower denied that he was presently a member of the Communist Party but refused to answer questions about his activities in 1940 and 1941; whereas, in the instant case, the appellant relied on the privilege against self-incrimination with respect to all questions relating to Communist Party membership irrespective of the date. However, this is completely immaterial in the light of the holding in the Slochower case, where the court said: ". . . the privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury. As we pointed out in Ullmann, a witness may have a reasonable fear of prosecution and yet be innocent of any wrongdoing. The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances. See *Griswold, The Fifth Amendment Today* (1955)."

The constitutional privilege against self incrimination has been the subject of many recent decisions by the Supreme Court of the United States. In the recent case of *Quinn* v. *United States,* 349 U.S. 155 [75 S.Ct. 668, at page 673, 99 L.Ed. 964], Mr. Chief Justice Warren speaking for the court declared: "The privilege against self-incrimination is a right that was hard-earned by our forefathers. The reasons for its inclusion in the Constitution—and the necessities for its preservation—are to be found in the lessons of history. . . .

To apply the privilege narrowly or begrudgingly—to treat it as an historical relic, at most merely to be tolerated—is to ignore its development and purpose.'' And in *Ullmann* v. *United States*, 350 U.S. 422, 428, 429 [76 S.Ct. 497, 100 L.Ed. 511], Mr. Justice Frankfurter painted a somewhat graphic picture of the origin and objectives of this salutary constitutional provision: ''No doubt the constitutional privilege may, on occasion, save a guilty man from his just deserts. It was aimed at a more far-reaching evil—a recurrence of the Inquisition and the Star Chamber, even if not in their stark brutality. Prevention of the greater evil was deemed of more importance than occurrence of the lesser evil. Having had much experience with a tendency in human nature to abuse power, the Founders sought to close the doors against like future abuses by law-enforcing agencies.

''As no constitutional guarantee enjoys preference so none should suffer subordination or deletion. It is appropriate to read the conviction expressed in a memorable address by Senator Albert J. Beveridge to the American Bar Association in 1920, a time when there was also manifested impatience with some of the restrictions of the Constitution in the presumed interest of security. His appeal was to the Constitution —to the whole Constitution, not to a mutilating selection of those parts only which for the moment find favor. [Footnote 3:] 'If liberty is worth keeping and free representative government worth saving, we must stand for *all* American fundamentals—not some, but all. All are woven into the great fabric of our national well-being. We cannot hold fast to some only, and abandon others that, for the moment, we find inconvenient. If one American fundamental is prostrated, others in the end will surely fall. The success or failure of the American theory of society and government, depends upon our fidelity to every one of those inter-dependent parts of that immortal charter of orderly freedom, the Constitution of the United States.' (Beveridge, *The Assault upon American Fundamentals*, 45 Reports of American Bar Assn., 188, 216 [1920].) To view a particular provision of the Bill of Rights with disfavor inevitably results in a constricted application of it. This is to disrespect the Constitution.''

While the foregoing sufficiently disposes of this case on constitutional grounds, I want to again assert that I adhere to the views expressed in my dissenting opinion in *Steinmetz* v. *California State Board of Education*, 44 Cal.2d 816, 825 [285 P.2d 617], and in the views expressed by Mr. Justice Black

and Mr. Justice Douglas in their dissents in *Adler* v. *Board of Education,* 342 U.S. 485 [72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R. 2d 472], *Garner* v. *Board of Public Works,* 341 U.S. 716 [71 S.Ct. 909, 95 L.Ed. 1317], and in their concurrences in *Wieman* v. *Updergraff,* 344 U.S. 183 [73 S.Ct. 215, 97 L.Ed. 216].

While it is my view that a school board should be given broad powers to investigate the moral as well as the intellectual and educational backgrounds of those whom they employ to teach in our public schools, I do not believe that mere membership in a so-called proscribed organization should be a sufficient ground to justify the discharge of a teacher whose conduct during his period of employment has been exemplary.

I have no sympathy whatsoever with the philosophy which establishes guilt by association. Neither would I determine innocence on the same basis. Holy Writ tells us that a man known as Jesus of Nazareth was ostracized and condemned by religious and social leaders of His own race because He associated with "publicans and sinners" (Matthew 9:11 11:19, Luke 5:30 15:2 19:7), yet half the world will unite this month in commemoration of the date of His birth and bow in reverence to His name. I am sufficiently naive to believe that there may be those who "can talk with crowds and keep their virtue, or walk with kings nor lose the common touch." It has been aptly said that, "It is not by deed alone can any eye the whole soul's measure scan—the whole round life from the cradle to the grave must be the test of man." About 20 years ago liberal minded people in this country were shocked by the disclosure that a man who had just been appointed an Associate Justice of the Supreme Court of the United States had, in his youth, been a member of the Ku Klux Klan, yet that man by an unbroken line of judicial opinions has indelibly written into the decisional law of this country a most liberal philosophy of civil liberties and racial and religious tolerance. Many other similar examples may be mentioned, all of which serve to demonstrate that mere membership in an organization or group does not necessarily classify anyone as an adherent of its teachings. Of course, such membership or association may be, and often is, used in political campaigns to discredit candidates for public office when such organizations are in popular disfavor and super patriots use them as whipping boys.

In the case at bar there is no suggestion that Professor Mass ever engaged in any subversive activities or disloyal conduct of any nature or character whatsoever or that his

conduct as a teacher has not been at all times commensurate with the highest standards of the teaching profession. The sole and only charge against Professor Mass is that when interrogated by the Un-American Activities Committee of the House of Representatives with respect to membership in the Communist Party, he refused to answer on the ground that his answers might incriminate him and he took refuge under the Fifth Amendment to the Constitution of the United States, which, in my opinion he had both a moral and legal right to do.

While it is my opinion that the act here involved is unconstitutional and that no charge against the appellant can be sustained thereunder, I join in the judgment of reversal, which will set the case at large in the trial court for such disposition as that court may determine to be in accordance with the law.

SPENCE, J.—I dissent.

Upon the authority of our own decisions, as well as those of the United States Supreme Court, this court recently declared: "Moreover, a person may properly be required to disclose information relevant to fitness and loyalty as a reasonable condition for obtaining or retaining public employment, even though the disclosure, under some circumstances, may amount to self-incrimination. (*Pockman* v. *Leonard,* 39 Cal. 2d 676, 687 [249 P.2d 267]; *Christal* v. *Police Com.,* 33 Cal. App.2d 564, 567 et seq. [92 P.2d 416]; cf. *Garner* v. *Board of Public Works,* 341 U.S. 716, 719-720 [71 S.Ct. 909, 95 L.Ed. 1317]; *Adler* v. *Board of Education,* 342 U.S. 485, 492-493 [72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472].) A public employee, of course, cannot be forced to give an answer which may tend to incriminate him, but he may be required to choose between disclosing information and losing his employment." (*Steinmetz* v. *California State Board of Education,* 44 Cal.2d 816, 824-825 [285 P.2d 617].)

This was precisely the choice which defendant was required to make, and which he did make, when he appeared before the House of Representatives Committee on Un-American Activities in 1953. He there admittedly refused to answer a series of relevant questions on subjects specifically covered by section 12604 of the Education Code. Charges were filed by the superintendent, and defendant appeared at a meeting of the Board of Education in connection with those charges. Thereafter he was suspended and notified of the board's intention to dismiss him. He then demanded a hearing, and the

board filed the present action pursuant to section 13529 of the Education Code.

In the present action, a copy of the charges, together with a transcript of defendant's testimony before the committee, were made a part of the complaint. Defendant admitted in his answer that he had been asked the questions by the committee and had refused to answer them. He offered no reasons for his refusal other than the claim that he was privileged to refuse to answer. Following trial, the court found that the charges were true and that they constituted grounds for dismissal. In my opinion, this judgment should be affirmed.

The majority opinion, which reverses the judgment, is based upon the majority's construction of the recent decision of the United States Supreme Court in *Slochower* v. *Board of Higher Education*, 350 U.S. 551 [76 S.Ct. 637, 100 L.Ed. 692]. I do not believe that the decision in the Slochower case requires a reversal here. It was decided by a sharply divided court, and the decision in that case should not be extended by this court to cover a wholly distinguishable situation.

In the Slochower case, the broad and vague charter provision is set forth in a footnote therein. It applied to any employee who refused ''to answer any question regarding the property, government or affairs of the city or of any county included within its territorial limits, or regarding the nomination, election, appointment or official conduct of any officer or employee of the city or of any such county, . . .'' No provision was made for a hearing of any kind. On the contrary, the automatic effect of any such refusal was that ''his term or tenure of office or employment shall terminate and such office or employment shall be vacant, . . .'' As stated by the court, ''Dismissal under this provision is therefore automatic and there is no right to charges, notice, hearing, or opportunity to explain.'' (350 U.S. 554.) It is therefore understandable that there could have been a difference of opinion among the members of the court on the question of due process. The majority in the Slochower case concluded that ''the summary dismissal of appellant in the circumstances of this case violates due process of law.'' (350 U.S. 555.) It is further understandable, in view of the almost unlimited field which might be covered by questions purportedly relating to the numerous subjects covered by the charter, that the majority should have said: ''No consideration is given to such factors as the subject matter of the questions, remoteness of the period to which they are directed, or justification for the exercise of the privilege.'' (350 U.S. 558.)

Turning to the present case, an entirely different situation is presented. Section 12604 of the Education Code is narrowly drawn both with respect to subject matter and time. It covers only the refusal to answer questions relating to (1) *"present personal advocacy"* of the forceful overthrow of government, or *"present knowing membership* in any organization which, to the knowledge of such employee, advocates" such forceful overthrow, or *"present knowing membership* of such employee in the Communist Party" or (2) *"past knowing membership at any time since September 10, 1948"* in such organizations. Thus the field of the questions which the employee was required to answer was strictly confined to the specific area which the Legislature reasonably deemed relevant to the question of such public employee's loyalty to the government and his lack of subversive purposes. Furthermore, the field of the questions was limited in point of time to "any time since September 10, 1948." Again said section 12604 did not provide for automatic dismissal but only for dismissal "in the manner provided by law." This provision obviously contemplated a judicial hearing as provided by section 13529 of the Education Code, which judicial hearing was accorded to defendant. At that hearing he admitted his violation of the section and raised only the issue of the constitutionality of the section.

In my opinion, section 12604 is constitutional in all respects, and such constitutionality is not affected by the mandatory language thereof. The section provides that in the event of the employee's refusal to answer questions relating to the limited field covered by the statute, he "shall be guilty of insubordination and guilty of violating this section and shall be suspended and dismissed from his employment in the manner provided by law." Thus the only issue to be determined in such cases upon judicial review under section 13529 is whether the defendant refused to answer relevant questions in the limited field covered by section 12604 when he was subpoenaed before, and questioned by, a legislative committee of the type therein described. The duty to answer such relevant questions is not an unreasonable requirement, as the harm is done when the teacher refuses to answer such questions in a public hearing before such a committee. Such refusal not only constitutes a violation of duty on the part of one holding a public position of honor and trust, but it tends to bring the employee under a cloud of suspicion concerning his loyalty to the very government to which he owes

his appointment and to which he looks for his compensation. Such refusal likewise tends to destroy the confidence of the general public in our whole system of public education.

The majority opinion, however, does not meet squarely the issue of the constitutionality of section 12604. It is conceded therein that defendant has refused to answer relevant questions as required by that section, and that he has had a judicial review under section 13529. Nevertheless, it reverses the judgment of the trial court and remands the cause for "a determination of the sufficiency of his reasons for invoking the privilege." The majority appears to reach this result upon the assumption that the decision in the Slochower case compels it, but I believe this to be an erroneous assumption. That case did not declare that a teacher could not constitutionally be "required to choose between disclosing information and losing his employment," as we have heretofore held. (*Steinmetz* v. *California State Board of Education, supra,* 44 Cal.2d 816, 824-825.) It merely held that the charter there under consideration, which provided for "summary dismissal" without any hearing, violated due process.

The equivocal declaration of the majority on the issue of constitutionality and the resulting remand for a further judicial hearing significantly furnish no guide to the trial court for the purpose of determining the "sufficiency" of any reasons which may be urged on a retrial for defendant's refusal to answer the questions. If the section is constitutional, then under the admitted facts defendant was required to make his choice, which he did; and his reasons for making that choice would appear to be wholly immaterial. In other words, he was compelled to choose between complying with a reasonable duty imposed upon him by virtue of his position and, on the other hand, exercising his privilege and losing his position. (See *Steinmetz* v. *California State Board of Education, supra,* 44 Cal.2d 816, and authorities cited therein.) Thus the remand for a further hearing constitutes an idle act, for it launches the trial court upon an uncharted course to determine the "sufficiency" of reasons for defendant's refusal, which reasons cannot be sufficient under the admitted facts.

In my opinion, the issue of the constitutionality should be met squarely, the statute should be held to be constitutional, and the judgment of the trial court should be affirmed.

Shenk, J., and McComb, J., concurred.