Civ. No. 6652. Fourth Dist. Apr. 23, 1962.]

HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT, Plaintiff and Respondent, v. HAROLD COLLINS, Defendant and Appellant.

Daniel G. Marshall for Defendant and Appellant.

Stephen K. Tamura, County Counsel, and George F. Holden, Assistant County Counsel, for Plaintiff and Respondent.

GRIFFIN, P. J.—The respondent Huntington Beach Union High School District (hereafter referred to as school district) instituted these proceedings under Education Code, section 13413, to dismiss appellant teacher on the grounds that, at a hearing before the respondent's governing board of trustees, he refused to answer questions relating to matters specified in Education Code, section 12955. The case was submitted to the trial court on stipulated facts and the court adjudged that the charges were true and that appellant might be dismissed.

It was agreed that appellant was employed as a teacher by the school district and that he was in a probationary status when these events occurred. On September 5, 1957, appellant had taken the oath of allegiance required by Government Code, chapter 8, division 4, title 1. At some time prior to December 14, 1959, certain documents and information were delivered to the board of trustees of respondent school district (hereafter referred to as board) by the Committee on Un-American Activities of the House of Representatives of the Congress of the United States. Following the receipt of these documents and information, the board ordered appellant to appear before the board on December 14, 1959, to answer questions relating to the matters specified in Education Code, section 12955. Appellant appeared before the board on that date and requested a continuance, which was granted. Appellant also requested to be allowed to inspect the information and documents received by the board from the House Un-American Activities Committee. This request was denied by the board.

Prior to the second meeting, on December 21, 1959, appellant requested that the meeting be open to the public. At the outset of the meeting, the chairman of the board stated that the board desired to consider the matter at an executive session to protect appellant's name, but that the meeting would be open to the public since appellant desired this. Thereafter, the appellant was duly sworn and asked the following questions:

"Mr. Collins, are you now knowingly a member of the Communist party?

"Mr. Collins, were you knowingly a member of the Communist party at any time during the year 1959?

"Mr. Collins, were you knowingly a member of the Communist party at any time during the year 1958?

''Were you knowingly a member of the Communist party at any time during the year 1957?

''Were you knowingly a member of the Communist party at any time during the years 1957 to and including the year 1946?

''Were you knowingly a member of the Communist party at any time during the year 1945 subsequent to the date of October 3rd of that year?

''Were you at any time since October 3, 1945, knowingly a member in any organization which, to your knowledge during the time of your membership, advocated the forceful or violent overthrow of the government of the United States or of any state or political sub-division?

''Are you now knowingly a member in any organization which to your knowledge advocates the forceful or violent overthrow of the government of the United States or of any state or political sub-division?

''Do you now personally advocate the forceful or violent overthrow of the government of the United States or of any state or political sub-division?''

In response to the first question, appellant read a lengthy prepared statement. This answer discussed, among other things, appellant's military record during World War II, the manner in which a subpoena had been served upon appellant by an employee of a congressional subcommittee, and his unfavorable opinion of the House Un-American Activities Committee. He quoted various writings which he said agreed with the latter opinion. Appellant then discussed his record as a teacher of art in grades seven to 12 since 1949 and he described his personal aesthetic and cultural attitudes. Appellant mentioned several successes which he had enjoyed in his work as a professional artist. He discussed academic freedom, the cold war, patriotism and anti-intellectualism. He thanked the members of the board for their courteous consideration of his views. He voiced his belief in and willingness to support the Constitution of the United States and its Bill of Rights. He deplored loyalty oaths and affidavits. But he did not answer the question propounded by the board. As an answer to the subsequent questions, appellant referred to and adopted his previous statement. Twice appellant was reminded of the provisions of Education Code, section 12951, which says that an indirect or evasive answer to any question relating to any of the matters specified in section 12955 or section 12956,

or an answer which neither affirms nor denies, shall, for the purpose of the act, be considered a failure or refusal to answer, regardless of the explanation given for any such answer. Notwithstanding these admonitions, appellant refused to make specific answers to these questions. The meeting was thereupon adjourned.

A subsequent meeting was held on December 28, 1959. The chairman opened this meeting by informing the appellant that the board had reviewed the answers which had been given by him and considered them to be evasive. The chairman said that the board's only interest was to inquire into appellant's fitness to teach in the public schools. The chairman further stated that he recognized that appellant may have been under great emotional strain and that it was the desire of the board that he be provided another opportunity to answer specifically and directly the questions propounded. Appellant was asked whether he was willing to give direct answers affirming or denying the questions previously propounded to him at the meeting of December 21, 1959. Again, appellant refused to answer the questions directly, but he issued another lengthy statement which contains general references to the First, the Fifth and the Fourteenth Amendment to the United States Constitution. His reference to the Fifth Amendment was a general reference to the various guaranties contained therein. It does not appear to have been intended as a reliance on that amendment's provision against self-incrimination. The board approved a motion stating that appellant's answers were evasive and that he should be suspended and thereupon adjourned the meeting.

Three days later, on December 31, 1959, the board formulated and filed its written statement of charges upon which this action is based. Appellant was charged with violation of the provisions of Education Code, sections 12956 and 12958, improper conduct, and insubordination in refusing to specifically answer the questions put to him at the meetings of December 21 and December 28.

The trial court found that the charges filed against the appellant were true and constituted sufficient grounds for appellant's suspension under the provisions of Education Code, section 13408 and that they constituted sufficient grounds for appellant's dismissal under the provisions of Education Code, sections 12958, 12956 and subdivisions (a)

682

and (j) of section 13403. Judgment was entered in accordance with these findings.

Appellant's first contention is that the board held an executive session at which it made a vital decision as to this case and that this was contrary to Government Code, sections 54950, 54958 and 54957. ▮▮▮ Appellant points out that he had requested that the matter be heard at a public hearing. At the outset of the second hearing, the chairman of the board said that the board had reviewed appellant's answers to the questions asked at the first meeting and that the board considered these answers evasive. Then the chairman said that the board had decided to allow appellant another opportunity to answer the questions. Appellant argues that under Government Code, section 54957, it was improper for the board to consider any phase of the matter at an executive session, since he had previously requested a public hearing.

The record does not show that the board took any action toward appellant's dismissal or heard any additional evidence pertaining thereto at the executive session. The only decision reached during the executive session was to allow appellant another opportunity to answer the questions which he had failed to answer at the first meeting. Then, during the second public hearing, appellant again refused to answer the questions. After this second refusal, the board approved a motion stating that appellant's answers were evasive and that he should be suspended. If there was a technical violation of the Brown Act (Gov. Code, §§ 54950-54960), it in no way prejudiced appellant's rights and did not invalidate the action of the board.

Appellant next contends that the board violated public policy when it initiated the hearing after receiving information and documents from the House Un-American Activities Committee. Appellant urges that the House Un-American Activities Committee is limited in its functions and that it can only gather information to be used by the Congress in the exercise of its legislative function. He urges that the Congress has no authority to report information it has acquired to local school boards. Appellant's conclusion is that this information was unlawfully transmitted to the local school board and therefore the subsequent actions of the board were tainted with this illegality. (Citing *Watkins* v. *United States*, 354 U.S. 178 [77 S.Ct. 1173, 1 L.Ed.2d 1273]; *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].)

 This contention is false in its premises and erroneous in its conclusion. The record in no way indicates how the House Un-American Activities Committee acquired the information it sent to the local school board. Under time-honored rules, it must be presumed that official duties have been regularly performed and that the law has been obeyed. (Code Civ. Proc., § 1963, subds. 15, 33; *Bringle* v. *Board of Supervisors,* 54 Cal.2d 86, 89 [351 P.2d 765]; *McDowd* v. *Pig'n Whistle Corp.,* 26 Cal.2d 696, 699 [160 P.2d 797]; *Lavine* v. *Jessup,* 161 Cal.App.2d 59, 67 [326 P.2d 238].) We must presume that the House Un-American Activities Committee lawfully acquired this information and that its transmittal to the respondent board was authorized. To hold otherwise would be to embark upon an uncharted sea of speculation concerning the actions and motives of the legislative committee. The rule which forbids examination of the motives of legislators in enacting a statute also restrains our examination of the motives for the actions here complained of. (*Stahm* v. *Klein,* 179 Cal.App.2d 512, 518-520 [4 Cal.Rptr. 137].)

 Furthermore, although, under the Constitutions of the United States and of California, there is a distribution of power between the national and state governments and between the executive, legislative and judicial branches within each sovereignty, this does not require that the various governmental agencies shall not communicate with each other. For example, in order to facilitate the administration of justice without embarrassing conflicts, the federal and state courts have mutually adopted procedural rules. (*In re Roberts,* 40 Cal.2d 745 [255 P.2d 782]; *People* v. *South,* 122 Cal.App. 505 [10 P.2d 109]; 11 Cal.Jur.2d, § 12, p. 310.) A statute creating a commission to confer with officials of other states and of the federal government, to formulate proposals for intergovernmental cooperation, was held constitutional in *Parker* v. *Riley,* 18 Cal.2d 83 [113 P.2d 873, 134 A.L.R. 1405]. The extent and character of the exchange of information between various governmental entities is limited only by common sense and the inherent necessities of the individual case. In any event, the extent of communication between governmental bodies is a matter of policy for the determination of the agencies involved and is not of such a nature as to justify or require our attention. (*Hancock* v. *Burns,* 158 Cal.App. 2d 785, 793 [323 P.2d 456].)

Our sole inquiry is whether the board had the authority to dismiss the appellant because of his refusal to answer the questions propounded to him. Clearly, the board had such authority.

Education Code, sections 12955 and 12956, provide that any employee of a school district can be required to appear before the governing board of the district and answer under oath questions of the type propounded to appellant. A refusal to answer such questions constitutes insubordination and is grounds for suspension and dismissal. Education Code, section 12951, provides that an evasive answer shall be considered a refusal to answer. In *Orange Coast etc. College Dist. v. St. John,* 146 Cal.App.2d 455 [303 P.2d 1056], it was held that the refusal of a teacher to answer the question, "Are you now a member of the Communist Party?" constituted grounds for dismissal.

In *Board of Education v. Mass,* 47 Cal.2d 494, 497-498 [304 P.2d 1015], our Supreme Court said: "The State of California has the power to require teachers in our public schools, as a condition to continued employment, to give evidence with respect to matters bearing upon their fitness to teach. (Citing cases.) It has been established by legislative findings and judicial decisions that the Communist Party is a continuing conspiracy against our government. (Citing cases.) Loyalty on the part of public employees is essential to orderly and dependable government and is therefore relevant to fitness for such employment. A teacher may properly be required to disclose information relative to fitness and loyalty as a reasonable condition for obtaining or retaining public employment, even though the disclosure under some circumstances may amount to self-incrimination."

Earlier in *Steinmetz v. California State Board of Education,* 44 Cal.2d 816, 823 [285 P.2d 617], the Supreme Court said: "A governmental body may, of course, make reasonable inquiries into matters pertaining to the fitness of its employees. Loyalty on the part of those in public employment is important to orderly and dependable government and is, therefore, relevant to fitness for such employment. (Citing case.) An employee's associates, as well as his conduct, are factors which may be considered by a state agency in determining his loyalty, and information on that subject may properly be elicited from him. (Citing cases.) In this connection, it has been held that a public employer may constitutionally require

its employees to disclose any past or present membership in the Communist Party.''

The principal rule announced in the foregoing cases respecting the power of public agencies has been repeatedly upheld by the United States Supreme Court. See *Beilan* v. *Board of Public Education, School Dist. of Pa.*, 357 U.S. 399 [78 S.Ct. 1317, 2 L.Ed.2d 1414]; *Nelson* v. *County of Los Angeles*, 362 U.S. 1 [80 S.Ct. 527, 4 L.Ed.2d 494]; *Cohen* v. *Hurley*, 366 U.S. 117 [81 S.Ct. 954, 6 L.Ed.2d 156]; *In re Anastaplo*, 366 U.S. 82 [81 S.Ct. 978, 6 L.Ed.2d 135]; *Konigsberg* v. *State Bar of California*, 366 U.S. 36 [81 S.Ct. 997, 6 L.Ed.2d 105].

Appellant's final contention is that the board's action was based upon an erroneous conclusion that the statute automatically required defendant's dismissal and that the board had no discretion in the matter. The record is bare of anything that would indicate that the board misunderstood the meaning of the statute. The record indicates that the board granted the appellant the public hearing he requested and carefully permitted him to fully state his reasons for refusing to answer the questions. In fact, at one point in the proceedings, the appellant thanked the board for their courteous attention to his views. In this state of affairs, we cannot hold that the board failed to consider appellant's reasons for refusing to answer when it made its decision as to the action to be taken.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied May 11, 1962, and appellant's petition for a hearing by the Supreme Court was denied June 20, 1962.