[Civ. No. 13620. Second Dist., Div. One. Nov. 4, 1942.]

E. D. BUSH, Respondent, v. INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA (an Unincorporated Association) et al., Defendants; LOCAL UNION NO. 728 OF THE INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA (an Unincorporated Association) et al., Appellants.

358

Bodkin, Breslin & Luddy and Michael G. Luddy for Appellants.

Paul D. McCormick and Francis C. Jones for Respondent.

DRAPEAU, J. pro tem. — Petitioner was a member of Local Union 728 of the International Alliance of Theatrical Stage Employes and Moving Picture Operators of the United States and Canada. The defendants are the local union, and sundry officers thereof. The local union and a number of others throughout the United States and Canada make up the International Alliance above mentioned. Although named as a defendant, the International Alliance was not served with summons and did not appear in the action. The petitioner was a member of the executive board of the local union and took an active part in its affairs.

A death benefit fund was maintained under the control and direction of the local union. Upon the death of a member in good standing with the fund, $1,000 was payable to his beneficiary. One of the members of the union died, whereupon $1,000 became due from the benefit fund to his widow. Petitioner, acting for the union, interviewed the widow and arranged for the payments due to her from this fund. These payments were to be in installments of $250. Out of the first installment petitioner received from the widow $122.

Complaints of the widow coming to the attention of other officers of the union, an investigation was instituted. At an interview in the office of the city attorney of the city of Los Angeles he was accused of extorting the money from

her. He claimed that the widow had borrowed from him $250 and that the $122, which he admitted receiving from her, was payment to him on account of this loan. He produced no receipt for the money which he stated he loaned to her. At the close of the interview, he agreed to return the money to the widow. Thereafter he paid $122 to an officer of the union and took a receipt for it reading as follows:

"Received From Edward Bush the sum of One Hundred and twenty-two dollars ($122.00) paid to Charles J. Ferguson as refund in full for Mrs. Marshall Seymour, in reference to the Death Fund of the I.A.T.S.E. Locals. Charles J. Ferguson acting Trustee for this money until it is turned over to Mrs. Marshall Seymour."

So far this recital of facts includes only matters about which there is no dispute, either as to the facts themselves or as to the method or manner of the proof thereof. Other facts will be later referred to, concerning which there is dispute as to the manner of proof.

In accordance with the constitution and bylaws of the union, charges were preferred against the petitioner. Upon these charges he was tried at a general assembly of members of the union, found guilty by a majority vote of the members present, and expelled from membership. From this order of expulsion he appealed, first, to the international president, and secondly, to the general executive board of the International Alliance. Both of these appeals were resolved against him. The constitution and bylaws provide for a final appeal to the general convention of the International Alliance.

The petitioner did not take this final appeal, but filed his complaint in the superior court praying that he be restored to membership by writ of mandate. Answer was filed, the matter heard by the trial court, and judgment followed directing the writ, together with damages in favor of petitioner. From this judgment the defendants have appealed.

In the trial tribunals of the union, and in this petition for mandate, petitioner has contended that because the charges against him were filed more than thirty days after the accuser had knowledge of the facts upon which they were based, his prosecution was barred by a provision of the bylaws of the union, which is in the nature of a statute of limitations.

This contention is founded upon article 12 of the bylaws which prescribes official forms to be used in a number of specified contingencies. Section 6 of this article prescribes forms to be used in preferring charges against members, and provides that upon the back of such forms certain instructions shall be set forth. Instruction number 3 is the one upon which petitioner relies and is as follows:

"3. These must be filed with the Executive Board of the Local, of which the accused is a member within thirty (30) days after the offense becomes known to the person making the charge."

Apparently petitioner and his counsel were very firmly convinced that this clause constituted a statute of limitations which protected him from being prosecuted. It was presented to every tribunal of the union as a bar to further proceedings against him, and when each tribunal ruled against him on that point, no testimony was presented in his defense.

There is nothing in the provision under consideration which sets forth any period of limitation of prosecution. It is merely directory with respect to the duty of a member preferring charges against another.

In criminal cases the common-law rule was that there was no limitation of time within which offenses might be prosecuted. Hence, unless a period of prescription or limitation is fixed by law for a particular offense or crime, a prosecution therefor is not barred by lapse of time. (22 C. J. S. 350.) If petitioner's contentions were correct, no member of the union could be brought to trial for any offense, because all that would be necessary to bar prosecution would be to bring the facts to the attention of some other member who would withhold charges for a period of thirty days. Moreover, as a matter of reasonable construction of a provision of this kind, it would be wrong to hold that so short a time as thirty days was a limitation of time within which charges might be filed against an erring member of a trades union, unless the language of the constitution or bylaws was so clear and unmistakable as to require such a construction.

Upon appeal to the president of the International Alliance, and upon subsequent appeal to the executive board of the Alliance, it was held that the provision in question was not a limitation upon the right of the union to try the member,—with which we are in entire agreement.

■ Petitioner next argued in support of, his petition that he had no notice of the time and place of his trial, and that he was forced to trial without opportunity to prepare a defense or produce witnesses in his behalf.

Charges were first presented against him before the executive board of the local union. A date was set for the hearing before this trial board, and petitioner was given personal notice thereof. He and his counsel appeared, and interposed the purported bar of the statute of limitations heretofore discussed. The executive board ruled against him; whereupon, he requested that his trial be held by the general assembly of the local union and left the meeting, a right given to him by the constitution and bylaws.

The executive board then certified the matter to the local union for trial at a general assembly thereof. This was set for a regular meeting date of the union. On that date petitioner and his counsel appeared and participated in the trial.

No objection was made to the proceeding as such. No request for a continuance was made and no denial of the charges was presented. The only thing presented by the petitioner was again the purported bar of the statute of limitations. Indeed, one of the members of the union there present requested the petitioner to make some defense, which he then and there declined to do.

The trial of which the petitioner complains he had no notice was pursuant to his own request. It was a part of a proceeding of which he already had notice, and it was his duty to be present and defend himself. Having appeared and participated in the trial with his counsel, he waived notice in any event.

Neither he nor his counsel at any time made any request for continuance of the trial. Therefore, this objection to the union's proceedings is entirely devoid of merit.

■ Petitioner has presented with considerable earnestness this next point, which is that no competent evidence was presented to the trial assembly which would support his expulsion.

As already stated, undisputed facts adduced in evidence before the trial assembly were (a) that the petitioner was an officer of the union; (b) that he did receive $122 from the widow, and (c) that after he was accused of extorting the money from the widow, he returned it to her, and by his own receipt admitted it to be a "refund in full for Mrs.

Marshall Seymour in reference to the Death Fund of the I.A.T.S.E. Locals.'' It was a fair inference for the trial body to make that when the petitioner returned the money and accepted a receipt with the word ''refund'' in it, he abandoned his claim that the $122 was part of a loan which he had made to the widow. And it was but a fair inference that this conduct supported the truth of the accusation against him that he had extorted $122 from the beneficiary of a deceased brother of his union.

The rule to be here applied is set forth in *Hugh McConville* v. *Milk Wagon Drivers' Union, Local No. 226, of San Francisco, California, et al.*, 106 Cal.App. 696 [289 P. 852] at page 698:

''Furthermore it is held generally that with respect to the merits of the charges which have resulted in suspension or expulsion of the member the province of the court is restricted to the ascertainment of whether there was any evidence whatever before the union to support its conclusion, and that it may not consider the weight of such evidence nor substitute its judgment thereon for the judgment of the tribunal before whom the member was tried. (*Martin's Modern Law of Labor Unions*, p. 393; *Fritz* v. *Knaub*, 57 Misc. Rep. 405, (103 N. Y. Supp. 1003)).''

The foregoing evidence satisfies all the contractual requirements as between petitioner and the union, in accordance with the rule in such cases as this which we must follow. (*Dingwall* v. *Amalgamated Assn.*, 4 Cal.App. 565 [88 P. 597].)

In addition to the undisputed evidence above set forth, there was introduced at the trial of petitioner before the trial assembly, statements certified by the makers thereof before a notary public as true. The first was a statement by the widow, in which she said that petitioner called on her and told her that she was not eligible for the money, that he had been to two or three different meetings about it, that when the first installment check was ready he called on the telephone and said he expected a cut and asked for $250 and told her ''I am practically throwing $750.00 in your lap''; and that on the day she got her check from the benefit fund she gave him $122. That he said to her, ''My word goes. If you do not want to play ball with me about the money, I can have the whole thing voided.''

The second was an affidavit of two individuals who de-

posed and said: Affiant A. That he had at the request of the petitioner contacted the widow and offered her $200 for a receipt setting forth that she had borrowed money from the petitioner and that the money which she had turned over to him from her insurance check was in payment of the loan; that affiant A went to affiant B and told him the foregoing, whereupon affiant B called the widow on the telephone and stated to her that there was a couple hundred dollars in it for her if she would give either a receipt or an affidavit setting forth that she had borrowed $200 from petitioner and that the money which she paid him out of her insurance check was merely in repayment of the loan; and that at the conclusion of this telephone conversation affiant B said the widow told him she did not want any part of it and explained that the money petitioner paid her was in payment of what he insisted was his commission for getting her the insurance money.

Upon the trial neither the defendant nor his counsel objected to the reading of these affidavits, nor was any denial made of any of the facts contained therein. This evidence petitioner asserts was incompetent and should not have been received or considered as against him.

In this likewise petitioner is mistaken. It is to be remembered that we are not here considering the admissibility of evidence in a court of law. The rules adopted by those who associate themselves in organizations such as this are controlling.

"The constitution, rules and by-laws of a voluntary unincorporated association constitute a contract between the association and its members, and the rights and duties of the members as between themselves and in their relation to the association, in all matters affecting its internal government and the management of its affairs, are measured by the terms of such constitution and by-laws." (*Dingwall* v. *Amalgamated Assn., supra,* p. 569.) See, also, *Lawson* v. *Hewell,* 118 Cal. 613 [50 P. 763, 49 L.R.A. 400]; *Greenwood* v. *Building Trades Council, etc.,* 71 Cal.App. 159 [233 P. 823]; *Grand Grove A. O. of D.* v. *Duchein,* 105 Cal. 219 [38 P. 947]; and *Smith* v. *Kern County Medical Assn.,* 19 Cal.2d 263 [120 P.2d 874].)

Article XIV, section 18, of the constitution of the Alliance is as follows:

"If a witness be unable to attend the trial a written deposi-

tion of his testimony shall be taken in the form of an affidavit, and such portions of it as are not denied by the accused shall be admitted as evidence."

No part of any of the affidavits being denied by the petitioner, it was proper for the trial assembly to take the facts appearing in the affidavits also into consideration.

■ It is apparent from the record that the writ of mandate should have been denied in any event, for the reason that the petitioner failed to exhaust all the remedies provided by the constitution and bylaws of the union. As stated, these constitute a contract between the member and the union, binding both upon the member and the union. And, as heretofore stated, the constitution and bylaws of the union provided for a final appeal by an aggrieved member to the Alliance in convention assembled. This the petitioner failed to do, stopping with his appeal to the general executive board.

The latest case in this state touching upon this point is *Simpson v. The Salvation Army,* 49 Cal.App.2d 371, 374 [121 P.2d 847], in which the rule and the California authorities are stated as follows:

"It is well-settled in this state that a member of an association of this type must first exhaust the rights afforded him by the tribunals of the association before he may secure redress from the courts. (*Lawson v. Hewell,* 118 Cal. 613 [50 P. 763, 49 L.R.A. 400]; *Levy v. Magnolia Lodge, I. O. O. F.,* 110 Cal. 297 [42 P. 887]; *Coffey v. Los Angeles Firemen's R. Assn.,* 22 Cal.App.2d 510 [71 P.2d 328]; *Hughes v. American Trust Co.,* 134 Cal.App. 485 [25 P.2d 491]; *Greenwood v. Building Trades Council,* 71 Cal.App. 159 [233 P. 823]; *Dingwall v. Amalgamated Assn. etc.,* 4 Cal.App. 565 [88 P. 597].)

"It is true that there is a limited exception to this rule. Where the organization has violated its own laws and regulations and has arbitrarily violated a member's property rights, such as the right to sick benefits, the member need not exhaust his remedies within the organization before resort is had to the courts. (*Neto v. Conselho Amor etc.,* 18 Cal.App. 234 [122 P. 973]; *Schou v. Sotoyome Tribe, No. 12,* 140 Cal. 254 [73 P. 996].) Obviously, that exception is not here involved."

As in the case just cited, it is obvious that in the pending case no exception to the rule is involved.

There is no reason to discuss questions raised as to damages.

For the foregoing reasons the judgment is reversed.

The appeal from the order denying motion for new trial is dismissed; the appeal from the order denying motion to vacate the judgment is disposed of by the reversal of said judgment.

York, P. J., and Doran, J., concurred.