[Civ. No. 19314.   Second Dist., Div. Three.   May 22, 1953.]

LEE MILLER, Appellant, v. THE INTERNATIONAL UNION OF OPERATING ENGINEERS (an Unincorporated Association) et al., Respondents.

Aaron Sapiro for Appellant.

Parker, Stanbury, Reese & McGee, Raymond G. Stanbury and White McGee, Jr., for Respondents.

SHINN, P. J.—At the time of the occurrences which brought about this litigation, plaintiff was a member of Local Union No. 12 of The International Union of Operating Engineers, an unincorporated association, a local subdivision of "The International Union of Operating Engineers," also an unincorporated association. The general offices of the parent association were in Washington, D. C. The membership of

the local consisted principally of residents of Southern California and Southern Nevada. Since 1939 the parent association had been in control and management of the affairs of the local, through a supervisor appointed by the general president. A movement was under way to gain autonomy for the local, and in this effort plaintiff and five other members, hereinafter mentioned, were active. Appellant and the five other members published an occasional newspaper called "Autonomy News" which was distributed among some 10,000 members, contractors and others. Complaint was filed with the general executive board of the parent association charging the six members with having published articles defamatory of the general president. The national board took notice of the complaints and charges as acts in violation of the constitution of the union. In a trial in the Drake Hotel in Chicago the accused were found guilty and, upon findings made, sentence was imposed that they be fined $450 each and be suspended from membership for six years; providing that if they should promptly pay the fines and dues as they accrued the sentences would be suspended, but without right of the accused to attend meetings or participate in nominations, elections or other internal affairs of the union. Plaintiff brought this action against the two unions and numerous of their officers and agents, seeking declaratory relief, annulment of the order, and damages. A prior action brought by a member for the same purpose had been tried and findings and judgment rendered therein in favor of defendant. In the trial of the instant action testimony given at the former trial, consisting only of the testimony of the general counsel of the parent union, was introduced under stipulation. The findings in the former action, with a minor exception, were made the findings in the present action, by stipulation. Plaintiff did not appear at the Chicago trial and he did not introduce any evidence in the trial in the court below. Correspondence to which we shall refer, consisting of letters passing between plaintiff and his associates and the general secretary-treasurer, were attached to the complaint.

The question before the trial court was whether the general executive board acted within its powers, in good faith, in accordance with the laws of the union and the law of the land. (*Smith* v. *Kern County Medical Assn.*, 19 Cal.2d 263 [120 P.2d 874]; *Davis* v. *International Alliance, etc. Emp.*, 60 Cal.App.2d 713 [141 P.2d 486].)  The constitution and bylaws of the unions defined and measured the relations

between the union and its members with respect to all internal affairs and constituted a contract binding upon both. (*Dingwall* v. *Amalgamated Assn. of St. Ry. Emp.*, 4 Cal.App. 565 [88 P. 597].)

The trial court found that the general executive board acted within its constitutional powers, in good faith, and plaintiff and his associates were not deprived of the benefit of due process. The complete evidence that was before the general executive board was not produced at the trial in the instant case, but the evidence that was produced was ample to furnish a sound basis for the findings of the board.

Under article XVI, section 1 of the constitution, any member was subject to discipline for publishing or circulating any literature defamatory of a candidate for office, or an officer, and was triable before the general executive board. Under article V, section 7, the board could hold hearings and its findings of facts were final, conclusive and binding; the board had full power to determine the method of procedure and the times and places for holding hearings, trials and appeals.

The substance of the charges against the six members consisted of the publication and circulation of editions of the "Autonomy News" containing reprints from magazine articles, as to which the board found as follows: "That the said defendants published and circulated in said newspapers false and slanderous articles imputing to the General President acts of personal and official dishonesty, such as holding office for personal gain and illegally mulcting contractors; also imputing acts and allusions to so-called 'racketeering,' 'bad practices,' and 'criminal associations' by the General President. It is clear that the defendants intended to smear, defame and degrade not alone the person but the office as well, of the General President as is definitely shown by the clever manner in which the defendants cut out certain magazine articles and magazine photographs and re-assembled them in a composite photograph published by them in their issue of June 9, 1950, which composite photograph induced and was intended to induce the casual reader to believe an association existed between the General President and the notorious Capone and otherwise wrongfully and unfairly vilified, slandered and defamed him."

Plaintiff's points on the appeal may be stated as follows: (1) That the board received hearsay evidence consisting of letters and affidavits; (2) plaintiff was entitled to a trial in

Los Angeles; (3) he had a right to bring to the attention of the members of the union anything that was true in fact and of interest to them as members; (4) he was not tried before an impartial board; (5) he was entitled to a trial separate from the trial of the others who were jointly accused; and (6) that the board made one finding against him which is admitted to be untrue and the result of mistake.

There is no merit in the claim that the decision of the board was subject to annulment merely because hearsay evidence and affidavits were considered. One answer to the claim is that the record merely shows that affidavits were used and does not disclose their contents. Another is that if the trial was properly conducted in the absence of the accused, plaintiff must be deemed to have waived any objection to the receipt of hearsay evidence. (*Fox* v. *San Francisco Unified Sch. Dist.*, 111 Cal.App.2d 885 [245 P.2d 603] ; *Smith* v. *Kern County Medical Assn., supra,* 19 Cal.2d 263.) Moreover, the trial court found that the acts with which the accused were charged, and which are substantially admitted here by the pleadings, constituted violations of the constitution of the union. The published articles were in evidence before the board and, of themselves, furnished substantial evidence to justify the findings of the board. Where the findings of the board have substantial support in the evidence, a reviewing court may not reweigh the evidence or substitute its judgment for that of the board. (*Bush* v. *International Alliance*, 55 Cal.App.2d 357, 363 [130 P.2d 788].)

The constitution did not give plaintiff the right to be tried in Los Angeles. It was within the discretion of the board under the constitution to hold the trial in Chicago. The accused were notified by letter of October 18, 1950, that a trial would be held November 14th. They demanded a trial in Los Angeles and they were informed by the general secretary-treasurer that if they attended the trial in Chicago their reasonable expenses would be approved and paid. Through their spokesman they replied, demanding payment of their expenses of travel and while in attendance upon the hearing, and also their wages during the time they would be away from work. They were then requested to select two of their number to appear at the trial as their representatives and provision was made by the secretary for two airplane tickets for the representatives to be selected. This procedure was rejected by the members. The hearing was postponed from

November 14th to November 16th for the appearance of some representatives, but no appearance was made and the hearing was had on the 16th. The board found that the demands of the accused were unreasonable, that they had acted in bad faith and had no intention of attending the trial. Under these circumstances the contention that the accused were not given an opportunity to confront their witnesses and to be heard in their defense cannot be sustained.

Plaintiff says that he had a right to bring to the attention of the members the truth as to facts which were of interest to them. He does not deny that he participated in the publication and circulation of literature which was defamatory of the general president. It was defamatory, even if true, but plaintiff did not at any time attempt to prove the truth of the published articles.

There is no merit in the contention that the trial was not before an impartial board. The general president, being the only one defamed, did not participate in the proceedings.

It was within the discretion of the board to try the accused jointly where none of them appeared and demanded a separate trial. They were all charged with the same offense, and plaintiff's complaint that evidence introduced only against some of his associates might improperly have been considered as evidence against him, is purely imaginary. Moreover, if plaintiff had appeared at the hearing and requested a separate trial the request might have been granted. There is no merit in the claim that he was improperly tried jointly with the others.

Due to mistake, the board made a finding that plaintiff was the author of certain articles of which another member was the author, and that the initials R R M denoted a title, "Rabble Rouser Miller," which plaintiff had assumed. Plaintiff claims that this error was sufficient to invalidate the decision. Although the articles are not contained in the record, it does appear that they did not constitute the defamatory literature upon which the charges were founded. The evidence before the board sustained those charges and the findings thereon justified the decision.

The judgment from which the present appeal was taken is, in our opinion, the only one that could properly have been entered upon the pleadings, the evidence and the stipulations.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.