[Crim. No. 5425.   Second Dist., Div. Two.   Sept. 23, 1955.]

THE PEOPLE, Respondent, v. ROBERT LEE MURRAY et al., Defendants; WALTER E. BRAINERD, Appellant.

[redacted]

Ray L. Smith for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

FOX, J.—Defendant Brainerd was convicted of violating Vehicle Code, section 503 (driving an automobile without the owner's consent). He appeals from the judgment and the order denying his motion for a new trial.

On February 2d or 3d, 1955, Cecil M. Johnson's Chevrolet Club Coupé, bearing California license plates No. 1W51385, was stolen. On the latter date, Officer Goodman apprehended appellant and defendant Murray while they were riding in a sedan that belonged to appellant. Upon inspection of the car the officer found, under the right front seat, two 1955 California license plates No. 1W51385. Both Brainerd and Murray denied knowledge of the plates.

According to Murray's statement, he and appellant, in the latter's sedan, drove to the scene of the theft on the night of February 2d where they decided to steal the coupé. Murray stated that they "broke in the right wind wing to gain entrance to the car." The officer's examination of the vehicle revealed "evidence of tool marks on the right wind wing." Appellant drove the coupé "home" being followed by Murray in appellant's car. They removed the license plates and placed them under the right front seat of appellant's sedan, where Officer Goodman later found them.

Appellant and Murray were taken to the Wilshire Police Station, in Los Angeles, upon their arrest. It was there that Murray, in the absence of Brainerd, gave a statement, which was reduced to writing, admitting the theft and implicating

Brainerd. Murray and Brainerd were then taken to the Los Angeles city jail. En route to the jail Officer Mack asked appellant whether he "knew anything about the stolen Chevrolet." Brainerd replied that "he didn't have anything to say about it at that time."

In the interview room at the city jail, Officer Mack audibly read Murray's statement in the presence of both Murray and Brainerd. Murray reaffirmed the truthfulness of the statement and stated he had nothing to add to it. Officer Mack then asked appellant: "You heard me read this complete statement?" He replied, "Yes, I did." "Is it true you do not deny it, that you do not wish to make a statement regarding this on advice of your attorney?" Appellant responded: "Well, yes, that is right. My wife has talked to an attorney, but I don't know who he is, but I don't want to make a statement at this time."

At Brainerd's trial Murray (who had entered a plea of guilty) repudiated his statement to the police at the Wilshire Station insofar as it implicated appellant. Brainerd also denied being involved in the theft of the coupé. He admitted, however, a prior felony conviction for which he served time in the state prison.

Appellant's sole contention is that "The evidence is insufficient to sustain conviction." In support of this contention he points out that Murray's statement to the Wilshire police was hearsay since appellant was not present and then argues that it was not admissible in evidence for that reason and that without this statement there is no evidence to support his conviction. Appellant, however, overlooks the fact that the portion of Murray's statement inculpating him in the theft of the coupé was admitted without objection. In the interview room at the city jail the Murray statement was read in the presence of both Murray and appellant. As to the introduction of this conversation in evidence, the appellant merely requested that "the witness be instructed to give only that portion [of the conversation] given while defendant Brainerd was present." He was present during the entire interview. When the Murray statement (People's Exhibit 1) was offered in evidence at the preliminary hearing, the only objection on behalf of appellant was to the first page on the ground that "it pertained to matters not concerned by this complaint and has nothing to do with taking this car." This objection was sustained since the incident there referred to involved a restaurant in the city of Downey. ■ The

balance of the statement was admitted in evidence without objection. At the trial in the superior court it was stipulated that the People's case in chief be submitted on the transcript of the preliminary hearing and that "any exhibits received at the preliminary will be received in evidence here." It was upon this stipulation that People's Exhibit 1, the Murray statement, was received in evidence. Appellant, therefore, waived any objection to the admission of such hearsay in evidence, and cannot be heard to complain for the first time on appeal. (*People* v. *Beal,* 108 Cal.App.2d 200, 204 [239 P.2d 84].)

Hearsay evidence which is adduced without objection may properly be considered in support of a judgment of conviction. (*People* v. *Freer,* 104 Cal.App. 39 [285 P. 386]; *People* v. *Guiterez,* 126 Cal.App. 526 [14 P.2d 838]; *People* v. *Ines,* 90 Cal.App.2d 495 [203 P.2d 540].)

Assuming in favor of the judgment the existence of every fact which the court could have reasonably deduced from the evidence, it cannot be said that "upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) Murray told the police that they took the coupé, gaining entrance through the right wind wing, which showed "evidence of tool marks"; that appellant drove it home; that together they took the license plates off and "put them under the seat of Walt's [appellant's] car." This story was corroborated by the fact that Officer Goodman found the license plates from the coupé under the front seat in appellant's car. Possession alone of stolen property is sufficient to corroborate the confession of an accomplice. (*People* v. *Coakley,* 108 Cal.App. 2d 223, 228 [238 P.2d 633]; *People* v. *Rice,* 29 Cal.App.2d 614, 620 [85 P.2d 215]; *People* v. *Green,* 111 Cal.App.2d 794 799 [245 P.2d 526].) Furthermore, the failure of appellant to promptly deny the incriminating matter in the Murray statement was evidence from which the court could reasonably infer a consciousness of guilt on the part of appellant. (*People* v. *Gordon,* 61 Cal.App. 98, 100 [214 P. 276]; *People* v. *Bridges,* 73 Cal.App.2d 913, 915 [167 P.2d 793].)

Appellant points to the testimony of Murray to support his plea of innocence. But Murray had given the Wilshire police a statement specifically implicating appellant in this offense and had later reaffirmed its truthfulness at the city jail. It was of course for the trial judge to pass upon

Murray's credibility and determine which of his conflicting stories represented the truth. Implicit in the court's finding and judgment is the judge's disbelief of Murray's testimony repudiating his prior statements to the police. On this aspect of the case the following statement in *People* v. *Wissenfeld,* 36 Cal.2d 758, at 765 [227 P.2d 833], is apposite: "It is of no avail to appellant to cite the testimony of his codefendant [Murray] in an attempt to establish that the latter was the sole perpetrator of the two crimes charged, for the matter of the credibility of [Murray's] exonerating testimony was for the jury to resolve . . ."

The judgment and order are affirmed.

Moore, P. J., and McComb, J., concurred.