[L. A. No. 24678. In Bank. Mar. 27, 1959.]

JIM ALLEN, Appellant, v. LOS ANGELES COUNTY DISTRICT COUNCIL OF CARPENTERS (an Unincorporated Association) et al., Respondents.

Herbert W. Simmons, Jr., Abraham Gorenfeld and A. L. Wirin for Appellant.

Arthur Garrett for Respondents.

SPENCE, J.—Plaintiff sought a writ of mandate to compel his restoration to membership in his local union, and also a judgment for damages against the union and certain officials and members thereof for alleged wrongful expulsion. While he also sought herein a writ of mandate and a judgment for damages against his former employers, the defendant employers did not appear and the action was dismissed as to them. Plaintiff had previously filed a complaint with the National Labor Relations Board.

Following the trial of the present action, the court found and concluded that plaintiff's expulsion was "lawful and justified"; that he had been "fairly charged, tried and convicted, upon substantial evidence, of a substantial offense under the constitution and laws" of the union "in accordance with the requirements of due process of law"; that none of "plaintiff's rights of person or property have been violated"; that neither the union "nor any defendant herein is required to restore plaintiff to membership"; that plaintiff sustained "no damage or injury"; and that "insofar as his loss of employment by the corporate defendants herein is concerned and any reinstatement to employment by them and any wages lost since plaintiff was severed from such employment the exclusive jurisdiction thereof is in the National Labor Relations Board and this Court is without jurisdiction further to consider the same." From the judgment thereupon entered denying the relief demanded, plaintiff appeals.

This litigation apparently arises out of the attempt of the union to exclude from membership persons who are members of the Communist Party or related organizations. ▮ That the union could properly provide in its constitution and laws for excluding such persons is made clear by federal legislation (U.S. Stats. at Large, Vol. 68, Public Law 637, chap. 886, p. 775) and by state legislation (Gov. Code, § 1027.5). The cited federal act, relating to "Communist organizations," including the "Communist Party" and "Communist-infiltrated organizations," declares in part: "The Congress hereby finds and declares that the Communist Party of the United States, although purportedly a political party, is in fact an instrumentality of a conspiracy to overthrow the Government of the

United States. . . . It is the means whereby individuals are seduced into the service of the world Communist movement, trained to do its bidding, and directed and controlled in the conspiratorial performance of their revolutionary services." The cited state act, relating to "World Communism," declares in part: "There exists a world-wide revolutionary movement to establish a totalitarian dictatorship based upon force and violence rather than upon law."

The union's constitution, by-laws, and ritual required each member to take an oath and required the president to advise the new member, before taking that oath, that the union did not recognize the Communist Party as a political organization. Plaintiff became a member of this union, known as Local 1976 of the United Brotherhood of Carpenters and Joiners of America. The above-mentioned oath which he took when becoming a member read as follows: "I further affirm and declare that I am not now affiliated with and never will join or give aid, comfort or support to any Revolutionary Organization or to any organization that tries to disrupt or cause dissension in any Local Union, District Council, . . . of the United Brotherhood of Carpenters and Joiners of America."

Certain members of the union later filed charges against plaintiff, in the manner provided in the by-laws, for having "over a period of years given aid, comfort and support to Communistic-Front organizations." Timely notice of the charges was served on plaintiff, and a hearing was had before a duly appointed committee, with plaintiff and his counsel present. The evidence introduced consisted largely of newspaper articles and other documentary items.

Several articles were from the Daily People's World. One listed plaintiff as a union leader and signer of a statement released by the Civil Rights Congress, asking an end to contempt proceedings against persons who had refused to turn over membership lists to the courts. The statement declared: "We demand the rights of Communists, along with those of all Americans, be fully respected." Another, entitled "Lead the Fight, Communists Urge NAACP," stated that certain reactionary elements in the National Association for the Advancement of Colored People had demanded removal of Communists and other progressives from the nominating committee of the NAACP and from nomination in recent elections; and that plaintiff was one of those barred from office. Another described plaintiff as a leader in the labor

movement and as one of the founders of the Negro Labor Council. An item from another newspaper stated that the Attorney General of the United States had declared that this Council was to be named on the list of organizations designated by the Justice Department as subversive. Other newspaper items were introduced setting forth that an officer of the Civil Rights Congress, who had been cited for contempt of Congress for refusing to divulge the names of members of his group or contributors to it, would speak at a reception for him and at a mass meeting, and that plaintiff was one of the sponsors of the reception. It was further stated that the scheduled speaker had admitted that his organization was once listed among Communist-front groups by the United States Attorney General. There was also introduced at the hearing a copy of the Fourth Report of Un-American Activities in California, in which the Civil Rights Congress is declared to be a subversive organization and under Communist control; and a document used by the Housing Authority of the City of Los Angeles likewise listing the Civil Rights Congress among subversive organizations. In addition, there were introduced such documents as a postcard printed by plaintiff urging union members to attend his trial; letters from a state senator addressed to a union officer setting forth for evaluation various instances of plaintiff's activities; and a number of letters and postcards, some anonymous, sent to the union in protest of plaintiff's oncoming trial. Plaintiff made no denial before the committee of his membership in the organizations named or of his activities as recited in the newspaper articles.

In the present action, plaintiff did testify but again made no such denial. He merely challenged the regularity of the proceedings before the committee, and the competency and sufficiency of the evidence presented there. In connection with the issue of damages, his testimony was extremely evasive, equivocal and uncertain in fixing his actual earnings for the years in question. When questioned regarding the current year, he professed not to have computed his earnings with any exactitude although he knew that he was "coming to testify" at the trial. With respect to prior years, he was able to furnish only partial reports and could not remember whether the accountant had given him copies of his income tax returns. A union delegate testified as to the employment and dispatching policies of the union. He stated that the union kept an open and nondiscriminatory hiring list; that the local would

permit members or nonmembers to sign the list so as to be available for calls to work; and that if plaintiff had applied, he could have been sent on jobs on the same basis as union members.

■ The evidence in court established that plaintiff had been a business agent and an officer of his local union, and as such agent he would have had to file certain affidavits, including the non-Communist affidavit required by the Labor Relations Act of 1947. Plaintiff testified that he could not remember whether he had ever signed such an affidavit. He insisted, however, that since his expulsion from the union, he had been shunned by his fellow-workers, but it appears that the same reaction could have resulted from his activities in support of the causes of the organizations named in the evidence presented at the committee hearing. Plaintiff was then asked in court: "Have you ever been a member of the Communist Party?" He first responded that he "wouldn't like to answer that question." Later, he stated that he would like to stand on his constitutional rights and would refuse to answer the question because it might tend to incriminate him. Finally, in attempting an explanation, plaintiff testified: "The reason that I give is, that if I answer this question 'no,' then I understand that later on somebody could come along and accuse me of lying here, which legally is considered perjury." This line of questioning was material on the theory of plaintiff's alleged damages as well as on his plea for reinstatement in the union when Communist Party membership would make him ineligible therefor.

On this appeal, plaintiff's main attack is directed at the proceedings before the union committee and the trial court's findings sustaining his expulsion as a result of such proceedings. He challenges the sufficiency of the charges made against him and the sufficiency of the evidence before the committee to justify his expulsion. He further challenges the finding of the trial court that he had suffered no damage by reason of his expulsion, the ruling of the trial court admitting and considering his refusal to testify concerning membership in the Communist Party, and the trial court's conclusion regarding the exclusive jurisdiction of the National Labor Relations Board.

■ Considering first the jurisdictional question, it is apparent that the trial court's conclusion concerning the exclusive jurisdiction of the National Labor Relations Board related only to the claims in plaintiff's complaint against his

former employers, as to whom this action was not tried since it had been previously dismissed. We need not discuss the propriety of that conclusion, as it is wholly immaterial here. The trial court properly assumed jurisdiction to determine the cause on the merits as against the union defendants (*International Assn. of Machinists* v. *Gonzales*, 356 U.S. 617, 621 [78 S.Ct. 923, 2 L.Ed.2d 1018]), and we therefore turn to a consideration of plaintiff's remaining claims on this appeal.

With respect to plaintiff's attack upon the regularity of the proceedings leading to his expulsion, it must be conceded that such proceedings were conducted in a very informal manner. The evidence introduced by both sides before the union committee consisted largely of newspaper articles and other documents, but there was practically no objection made upon any ground to the introduction of any part thereof. ■ In the absence of objection, the fact that such evidence may have fallen within the category of hearsay does not render it incompetent. (19 Cal.Jur.2d, Evidence, § 389, p. 123; *Powers* v. *Board of Public Works*, 216 Cal. 546, 552 [15 P.2d 156]; see also *Merchant etc. Assn.* v. *Kellogg E. & D. Co.*, 28 Cal.2d 594, 599 [170 P.2d 923]; *People* v. *Murray*, 135 Cal.App.2d 600, 603 [287 P.2d 775]; *McVey* v. *McVey*, 132 Cal.App.2d 120, 123 [281 P.2d 898].) ■ Furthermore, the union in its disciplinary hearing was not governed by the legal rules of evidence but by the terms of its own constitution and by-laws. (*Bush* v. *International Alliance of T. Stage Emp.*, 55 Cal.App. 2d 357, 364 [130 P.2d 788].) ■ The "refined and technical practices which have developed in the courts cannot be imposed upon the deliberations of workingmen, and the form of procedure is ordinarily immaterial if the accused is accorded a fair trial." (*Cason* v. *Glass Bottle Blowers Assn.*, 37 Cal. 2d 134, 143 [231 P.2d 6, 21 A.L.R.2d 1387].) In any event, and for the reasons hereinafter stated, we deem it unnecessary on this appeal from the judgment of the trial court denying the writ of mandate to consider in detail plaintiff's objections to the pleading and proof before the union committee.

■ The proceeding before the trial court for a writ of mandate was an equitable proceeding in which the trial court was vested with a wide discretion. (*Parker* v. *Bowron*, 40 Cal. 2d 344 [254 P.2d 6]; *Bartholomae Oil Corp.* v. *Superior Court*, 18 Cal.2d 726 [117 P.2d 674]; *Rogers* v. *Board of Directors of Pasadena*, 218 Cal. 221 [22 P.2d 509]; *El Camino L. Corp.* v. *Board of Supervisors*, 43 Cal.App.2d 351 [110 P.2d 1076];

*Neto* v. *Conselho Amor Da Sociedade,* 18 Cal.App. 234 [122 P. 973].) ▇ The doctrine of "clean hands" was therefore applicable. (32 Cal.Jur.2d, Mandamus, § 8, pp. 125-126.) [9] Thus, even assuming some showing of irregularity in the proceedings before the union committee, plaintiff may not successfully contend on this appeal that the trial court abused its discretion in denying the writ in the absence of a showing in the trial court that he came into court with "clean hands," and that he was entitled to the relief demanded, which was reinstatement to membership in the union. (See *Neto* v. *Conselho Amor Da Sociedade, supra,* 18 Cal.App. 234; Note, 36 A.L.R. 508.) Plaintiff made no such showing but, on the contrary, refused to answer the question relating to his eligibility to attain or retain such membership.

The trial court made its position clear during the discussion of counsel's objection to the question concerning plaintiff's membership in the Communist Party. The trial court stated: "Supposing now, you are asking for the equity—this is really an extraordinary legal remedy, and you are asking the Court to order him reinstated if it is shown in this trial that the trial proceedings were irregular, but it is shown that because of some impediment at the time he could not be a member of the union, then the Court would be unable to order, by writ of mandate, his reinstatement, even though expulsion had been improper." Despite this statement by the court, plaintiff persisted in his refusal to answer any questions concerning membership in the Communist Party, electing to stand upon his "Constitutional rights."

This is not the ordinary situation where the constitutional privilege is invoked by one who is merely a witness. Here plaintiff was the party who instituted the proceeding seeking affirmative relief by way of a writ of mandate to compel his reinstatement to membership in the union. The question concerning his membership in the Communist Party was therefore highly relevant. We need not determine whether his refusal to answer the question under these circumstances made adverse inferences permissible. (See *Fross* v. *Wotton,* 3 Cal.2d 384, 393-395 [44 P.2d 350].) We do hold, however, that his refusal to answer the question, together with his apparent lack of candor throughout his testimony and his failure to offer any evidence of his eligibility for membership when such eligibility had been questioned, justified the trial court in refusing in its discretion to issue a writ of mandate directing his reinstatement to membership. In other words, plaintiff's showing was

not such as to lead to the conclusion that he had come into court with "clean hands" or that he was entitled to the relief demanded.

Turning to the adverse finding on the damage issue, it is apparent from the record that the trial court did not believe plaintiff's evasive, equivocal and incomplete testimony concerning his alleged loss of earnings. Here again the burden was upon plaintiff, and the trial court was entirely justified in concluding that plaintiff had failed to sustain that burden.

The judgment is affirmed.

Shenk, J., Schauer, J., and McComb, J., concurred.

GIBSON, C. J.—I dissent.

There is nothing in this case to justify a conclusion that plaintiff can be denied reinstatement on the theory that he did not show clean hands in the trial court, and, since the record of the proceeding before the union discloses that plaintiff's expulsion was wrongful, the judgment should be reversed.

The theory that plaintiff lacked clean hands is not argued by the parties, and neither the findings nor the conclusions of the trial court support it.[1] Findings are required in mandamus proceedings in the superior court when there are questions of fact. (Code Civ. Proc., §§ 1109, 632; *Treu* v. *Kirkwood*, 42 Cal.2d 602, 611-613 [268 P.2d 482]; *Lassen* v. *City of Alameda*, 150 Cal.App.2d 44, 48 [309 P.2d 520]; *Delany* v. *Toomey*, 111 Cal.App.2d 570, 571-572 [245 P.2d 26]; *Beloin* v. *Blankenhorn*, 97 Cal.App.2d 662, 664 [218 P.2d 552]; see 2 Witkin, California Procedure (1954) 1833-1834.) Not only is there an absence of a finding upon this question but also, as we shall see, the evidence is insufficient to show that plaintiff lacked clean hands.

The only factors suggested by the majority opinion as indi-

---

[1]It is true, as pointed out by the majority, that the trial judge made a statement to the effect that if "it is shown that because of some impediment at the time [plaintiff] could not be a member of the union, then the court would be unable to order . . . his reinstatement, even though expulsion had been improper." However, this statement was made in the course of trial during a discussion between court and counsel as to whether plaintiff was required to answer if he had ever been a member of the Communist Party, and it was immediately followed by the judge's query, "Is that true?" and, after further discussion, by his remark, "I think it goes to the credibility of the witness, to the matter of damages also." Under these circumstances, particularly in the absence of any finding or conclusion indicating that the court's refusal to issue mandate was based on a lack of clean hands, the statement in question cannot properly be construed as showing that the court relied on such a theory.

cating lack of clean hands are plaintiff's refusal in the superior court to answer the question whether he was "ever" a member of the Communist Party, his failure to offer in that court any evidence of his eligibility for union membership, and his "apparent lack of candor throughout his testimony." While plaintiff's failure and refusal to testify in the trial court on these matters may be relevant on the issue of damages, this conduct has no bearing upon whether he is entitled to an order setting aside a wrongful expulsion. Insofar as concerns plaintiff's right to reinstatement, the subject matter as to which plaintiff refused or failed to testify involved questions of fact which were to be determined solely by the union, and, if the evidence before the union is insufficient to support the expulsion, the trial court cannot properly uphold the union's decision by relying on evidence not considered by the union.

The function of a superior court in reviewing the expulsion of a union member is to ascertain whether the member had a fair trial by the union's fact-finding body, including consideration of whether there was evidence before that body to support the charges made against the member and whether the charges constituted legally recognizable grounds for expulsion; the trial court may not reweigh the evidence before the union or receive additional evidence or pass upon the truth of the charges made, and, if it appears that the plaintiff did not have a fair trial before the union, the expulsion must be set aside, and further proceedings, if any, to determine the facts must be conducted by the union, not by the court. (See *Cason* v. *Glass Bottle Blowers Assn.,* 37 Cal.2d 134, 143-144, 147 [231 P.2d 6, 21 A.L.R.2d 1387] ; *Miller* v. *International Union etc. Engineers,* 118 Cal.App.2d 66, 70 [257 P.2d 85] ; *Taylor* v. *Marine Cooks & Stewards Assn.,* 117 Cal.App.2d 556, 565 [256 P.2d 595] ; *Bush* v. *International Alliance of T. Stage Emp.,* 55 Cal.App.2d 357, 363 [130 P.2d 788] ; *Ellis* v. *American Federation of Labor,* 48 Cal.App.2d 440, 445 [120 P.2d 79] ; *McConville* v. *Milk W. D. Union,* 106 Cal.App. 696, 697-698 [289 P. 852] ; *cf. Smith* v. *Kern County Medical Assn.,* 19 Cal.2d 263, 265 [120 P.2d 874] ; *Bernstein* v. *Alameda etc. Medical Assn.,* 139 Cal.App.2d 241, 253 [293 P.2d 862].) Plaintiff, of course, must make out a case for mandate, but he does so if he shows that he did not have a fair hearing before the union because the evidence presented there did not support the charges made or the charges were insufficient to justify expulsion.

These principles will be defeated if a trial court, under the

guise of passing upon the plaintiff's "clean hands," is permitted to receive evidence upon and make determinations of fact as to charges against a union member which are within the exclusive province of the union's fact-finding body. Plaintiff's refusal at trial to answer the question whether he was ever a Communist and his asserted failure to produce evidence there that he had eligibility for union membership fall within this category. The same is true of plaintiff's asserted lack of candor insofar as it concerns his right to reinstatement.[2] Since these are matters to be determined by the union, not by the court, it is difficult to see how plaintiff's conduct at trial shows that he lacked clean hands; he merely refused to go into factual matters which were inappropriate to a judicial review of his expulsion.

It is important to note, in connection with the above discussion, that an affirmative answer to the question whether plaintiff was "ever" a member of the Communist Party would not, without more, show a ground for expulsion under the union's oath provision which he is charged with having violated. Under any reasonable interpretation of the oath plaintiff was not subject to discipline on the ground that he was "ever" a member of, or aided, a "Revolutionary Organization" or one which tried to disrupt the union, but he could be expelled only if he was a member of or supported such a group at the time he took the oath or thereafter. Although the union's fact-finding body might be entitled to require an answer to a question of this nature under an extension of the principles which permit such a question as a means of investigating charges against school teachers and other public employees (see *Board of Education* v. *Mass*, 47 Cal.2d 494 [304 P.2d 1015] ; *Steinmetz* v. *California State Board of Education*, 44 Cal.2d 816 [285 P.2d 617]), the right to make such an investigation lies exclusively in the union and not with the courts. Any other conclusion would permit the trial court to weigh evidence and make findings that would be binding on

---

[2]Plaintiff's asserted lack of candor, including his equivocal testimony as to his loss of earnings, may have been properly considered by the trial court insofar as it related to the issue of damages, but this could not affect his right to reinstatement. Misconduct claimed to result in lack of clean hands will not bar relief unless it is closely connected with the matter in which the plaintiff seeks equitable assistance and is of such a prejudicial nature to the rights of another that it would be inequitable to grant him that assistance. (*Bradley Co.* v. *Bradley*, 165 Cal. 237, 242 [131 P. 750]; see *Dominguez* v. *Dominguez*, 136 Cal.App.2d 17, 20-21 [288 P.2d 195].)

the union when such functions should be performed only by that organization.

The union obviously had the burden of showing at its hearing that plaintiff had lost his eligibility to remain a member, whereas the view that in the trial court a plaintiff must affirmatively show his eligibility has the unfortunate and improper effect of shifting the burden on this issue to the plaintiff even if he shows that insufficient evidence was produced at the union hearing. Under such a rule a union could gain an unfair advantage by making a weak showing at the expulsion hearing, possibly deliberately, thus forcing the plaintiff not only to establish in the superior court that the union's trial was unfair but also to show by a preponderance of the evidence that he had not lost his eligibility.

The view that plaintiff does not have the burden of proof is supported in principle by the recent decision of *Speiser* v. *Randall,* 357 U.S. 513, 520 et seq. [78 S.Ct. 1332, 2 L.Ed.2d 1460], where the United States Supreme Court, after assuming without deciding that California may deny tax exemptions to persons who engage in advocating overthrow of the government by force, held that the allocation to the taxpayer of the burden of proof upon such an issue concerning free speech constituted a denial of due process. The court pointed out that where the burden of proof lies may be decisive of the outcome.[3] (357 U.S. at p. 525.) Plaintiff, of course, may be expelled only for cause after a fair hearing, and, by analogy to the Speiser case, the hearing would not be fair if the accused member were required to sustain the burden of showing that he had not lost his eligibility.

It follows from the foregoing that plaintiff's asserted lack of clean hands cannot properly be relied upon as a reason for not passing upon his contentions that the charges and the evidence presented to the union are insufficient to justify his expulsion.

In considering whether the proceedings before the union justified the ouster, it must be kept in mind that, regardless of what disciplinary rules a union might legally adopt, a court, when reviewing the charges and evidence against an

[3]The United States Supreme Court also declared that since only considerations of the greatest urgency can justify restrictions on speech, and since the validity of a restraint on speech in each case depends on careful analysis of the particular circumstances, the procedures by which the facts of the case are adjudicated are of special importance, and the validity of the restraint may turn on the safeguards which they afford. (357 U.S. at p. 521.)

expelled member, is limited to a consideration of the rules and regulations actually made by the union. Here the charges against plaintiff are confined to a violation of the oath provision.[4] It is necessary first to ascertain the meaning of the oath, being careful not to extend the requirement beyond what it purports to be.

The oath in substance proscribes membership in, or the giving of support to, either of two types of organizations: (1) any "Revolutionary Organization" and (2) any organization which tries to "disrupt or cause dissension" in the carpenters' union. The charges of which plaintiff was found to be guilty appear to relate solely to his asserted connection with organizations coming within the first of these two classes. The words "Revolutionary Organization" should be interpreted to mean any organization which advocates overthrow of the government by force and violence, and, in the absence of a specific definition of the term by the union, it would be unreasonable to give these words a more extensive meaning when applying them as a basis for expulsion in a case such as this. In addition, by analogy to the decisions of the United States Supreme Court and of this court relating to statutory oaths exacted of governmental employees, the oath should be interpreted to require *knowledge* by the union member of the character of the proscribed organization before his conduct in aiding the organization can be used as a basis for expulsion from the union. (*Cf. Wieman* v. *Updegraff,* 344 U.S. 183 [73 S.Ct. 215, 97 L.Ed. 216]; *Adler* v. *Board of Education,* 342 U.S. 485, 494 [72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472]; see distinction noted in *Steinmetz* v. *California State Board of Education,* 44 Cal.2d 816, 823-824 [285 P.2d 617].) It must also be kept in mind that the oath does not refer to a union member's activities prior to the time he took it.

In my view the evidence before the union as set forth in the majority opinion, even if the hearsay character of that evidence could be disregarded, is not sufficient to establish that plaintiff violated the oath, properly construed. The showing made does not reasonably warrant the conclusion that plaintiff supported any organization which, to his knowledge, advocated the overthrow of the government by force and violence. Nor was it shown at the union hearing that the conduct in question occurred at a time coming within the prohibition of

---

[4] The advising of each new member that the union "did not recognize the Communist Party as a political organization" is of little help in this connection as it does not purport to prohibit any activity by the members.

the oath, since there was no evidence as to when, if ever, plaintiff took the oath.

Moreover, all the evidence offered against plaintiff at the union hearing was hearsay not falling within any applicable exception to the hearsay rule, and a person cannot properly be expelled *solely* on the basis of such evidence. (*Cf. Steen* v. *Board of Civil Service Commrs.*, 26 Cal.2d 716, 726-727 [160 P.2d 816]; *Walker* v. *City of San Gabriel*, 20 Cal.2d 879, 881-882, 885 [129 P.2d 349, 142 A.L.R. 1383]; *Armistead* v. *City of Los Angeles*, 152 Cal.App.2d 319, 324 [313 P.2d 127].) This difficulty is not obviated by the fact that plaintiff did not object when the evidence was received. The refined and technical practices which have developed in the courts are not imposed upon deliberations of workingmen (*Cason* v. *Glass Bottle Blowers Assn.*, 37 Cal.2d 134, 143 [231 P.2d 6, 21 A.L.R. 2d 1387]), and it is obvious that under this rule hearsay was admissible and that objections to its admissibility would have been unavailable. Furthermore, after the case against him had been presented, plaintiff moved for a dismissal of the charges and relied on the hearsay character of the evidence as a ground for his motion. Even if the motion were not regarded as a sufficient objection to the taking of action on the basis of hearsay alone, a failure to object in an informal proceeding where technical rules are inapplicable should not be given the same effect as where a court trial is involved. Accordingly, plaintiff cannot be held to have waived his right to complain that the expulsion was based entirely on hearsay evidence.

The lack of proof warranting the expulsion cannot be ignored on the theory that plaintiff failed to make adequate denials and thus admitted the charges and the activities sought to be proved. The transcript of the hearing discloses that he pleaded not guilty to the charges and that he introduced evidence in an effort to show that some of the evidence relied upon by his accusers was untruthful. Further, in a statement made at the close of the proceeding, plaintiff said, "Now, I could go down the line and answer or refute these things, I think I could, but I don't feel that it is right for me to. I don't think I should, because they haven't proven anything." Under these circumstances it would be unreasonable to treat plaintiff's conduct at the hearing as amounting to admissions which cured the defects in the case against him.

I would reverse the judgment.

Traynor, J., concurred.