[Civ. No. 24576.   Second Dist., Div. Three.   Dec. 20, 1960.]

Estate of SHERLIE EDISON WOOLMAN, Deceased. MILO HARVEY WOOLMAN, Appellant, v. HENRY E. HUNTER, Respondent.

Lawrence M. Cahill for Appellant.

Coit I. Hughes and Betty B. Gillette for Respondent.

BISHOP, J. pro tem.*—Sherlie Edison Woolman, the decedent in this probate proceeding, died, intestate, February 19, 1955. He was a widower at the time of his death, his wife having predeceased him, December 16, 1944. A son of the predeceased wife by a former marriage initiated the particular proceedings now engaging our attention, by filing a petition, under section 1080 of the Probate Code, to have it decreed that he, the petitioner, was entitled to have all the property in the estate distributed to him. He was not entirely successful in his quest, but the probate court found that certain designated items of property had been either the community property of the decedent and his predeceased wife, or purchased from the proceeds of such property, and so should be distributed to the petitioner. This result was displeasing to the brother of the decedent, who, but for the decree, would receive all of the estate, and he appealed. We are reversing the decree because the evidence is insufficient to support an essential finding.

Petitioner's claim to any portion of the estate of the decedent, who is no blood relation of his, depends upon the provisions of section 228, Probate Code, which, since 1939, has read as follows: "If the decedent leaves neither spouse nor issue, and the estate, or any portion thereof was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse, or . . . became vested in the decedent on the death of such spouse by right of survivorship in a . . . joint tenancy between such spouse and the decedent . . . such property goes . . . to the [child] of the deceased spouse."

The burden of proving that the property he sought to have distributed to him came within the purview of this section, rested upon the petitioner. (*Estate of McGee* (1959), 168 Cal.App.2d 670, 674 [336 P.2d 622, 624]; *Estate of Ball* (1959), 171 Cal.App.2d 62, 64 [339 P.2d 912, 913] and cases cited.) The rule is clearly stated in *Estate of Adams* (1955), 132 Cal.App.2d 190, 204 [282 P.2d 190, 199]: "Upon his death intestate the heirs of the wife who, by virtue of section 228, become the statutory heirs of the husband, are entitled

*Assigned by Chairman of Judicial Council.

under that section in the circumstances there set forth, to one-half of the property that was formerly community property. But the burden is on them to prove what was community property, and to trace it into the estate of the surviving spouse. That burden requires two steps in the proof. First, as already pointed out, the predeceased spouse's heirs must prove what portion of the property was community property at the time of the death of the predeceased spouse. In making that proof, as already held in this opinion, the presumption is that property acquired or in possession during the marriage was community property. Then the heirs of the predeceased spouse have the burden of tracing the community property into the property found in the estate of the surviving spouse. In meeting this burden such heirs now find the presumptions reversed. Now the presumption is, that the property in the estate of the surviving spouse is the separate property of the surviving spouse, and, under the rule of the cases cited above, the heirs of the predeceased spouse must overcome that presumption by tracing the community property existing at the death of the predeceased spouse into the estate of the surviving spouse. Failing to so trace the community property by overcoming the presumption of separate character, the property in the estate of the surviving spouse must be treated as the separate property of the surviving spouse and distributed to his blood heirs.''

The essential findings of facts with which we are concerned, repeated in the decree, are these: ''That all of the property held by SHERLIE EDISON WOOLMAN and LIDIA R. WOOLMAN at the time of the death of LIDIA R. WOOLMAN was the community property of SHERLIE EDISON WOOLMAN and LIDIA R. WOOLMAN; that the property which has been proved to be of this class and which is now in this estate is as follows:

''1. U.S. Postal Savings Certificates
No. E-22395 .............................$   20.00
No. G-37748 ............................   100.00
No. H-23066 ............................   200.00
''2. U.S. Savings Bonds (Series E)
No. M 6,645,818E .......................$1,000.00
''3. 100 shares capital stock, Mojave Annex Tungston Co., par value 10¢
''4. Five $1000 4½% 50-year Southern Pacific Company Gold Bonds, Nos. 650, 8473, 11465, 21856, 31284.
''5. Lots 5 and 6 in Block 22 of Morro Strand Unit No. 1, in the County of San Luis Obispo.

. "That the following property has been proved to have been purchased from the proceeds of the above, and community property held:

"6. Three $500 face value U.S. Savings Bonds, Series E, Nos. D 13,968,713E, D 13,968,715E, D 13,968,716E.

"7. Two $1,000 face value U.S. Savings Bonds, Series E, Nos. M 10,564,704E and M 10,564,705E.''

We are going to take a liberal view of the evidence. The oral proceedings, at the hearing, were singularly free from objections to the introduction of evidence, which consisted in large part of exhibits. ■■■ Because of the absence of objections, in testing the evidence to see if it supports the findings we may, and shall, take into account some evidence that is hearsay (*Allen* v. *Los Angeles County District Council of Carpenters* (1959), 51 Cal.2d 805 [337 P.2d 457, 460]), and some that is otherwise incompetent (*West Coast L. Ins. Co.* v. *Crawford*, 58 Cal.App.2d 771, 784 [138 P.2d 384, 393-394]; *San Francisco etc. School Dist.* v. *Board of Nat. Missions* (1954), 129 Cal.App.2d 236, 239 [276 P.2d 829, 831]). Even with this liberal rule governing our review, however, we find the evidence insufficient, at an important point.

■■■ We shall deal, first, with item 4, the five $1,000 4½ per cent 50-year Southern Pacific Company Gold Bonds. In his petition for an order setting aside to him the whole of his wife's estate (under Prob. Code, § 640), filed April 3, 1945, the decedent swore that all of the property his wife left was personal property consisting of Postal Savings Certificates and United States Defense Bonds, of an estimated value of $1,746.75. The Southern Pacific Company Gold Bonds were not listed and, had they been, the total value of her estate would have exceeded the amount that could have been then set aside, without further ado, under section 640. The decedent also averred: "That the surviving spouse has no other estate of five thousand dollars in value," to escape the then limitations of section 645, Probate Code.

The inventory and appraisement, in the estate of decedent's predeceased wife contained no reference to any Southern Pacific Company Gold Bonds. The decree assigning all of decedent's deceased wife's estate to him identified the property it contained but it made no mention of any Southern Pacific Company Gold Bonds. In a letter dated March 7, 1958, addressed to the appellant—brother of the decedent— signed by the transfer agent of the Southern Pacific Company

the statement is made that the bonds in question, due May 1, 1981, "are in bearer coupon form," and that "we maintain no records of the holders of bearer coupon bonds." In the inventory and appraisement of the decedent's estate the five bonds are listed, the value given as $5,275 (with $180 possibly added as interest), and these facts given as a part of their identification: "Issued 5/1/31, due 5/1/81."

We find no further evidence respecting these bonds anywhere in the record; certainly none is called to our attention by the respondent. From that noted, the trial court was warranted in concluding that the five Southern Pacific Company Gold Bonds were issued before the death of decedent's wife, but could only speculate as to when they became the property of the decedent. The fact that bearer bonds were issued before 1944 does not prove that they were acquired before that date by the decedent. It is true that the evidence did not reveal sufficient income in the decedent to buy $5,000 worth of bonds, between 1944 and his death, but that only closes that one door, without opening the door by which he did acquire them, or closing all others but those open before December 16, 1944. There is no substantial support for the finding that the Southern Pacific Company Gold Bonds were a part of the community property owned by the decedent and his predeceased wife.

What we have noted about the absence of any reference to or listing of the Southern Pacific Company Gold Bonds in the various documents filed in the estate of decedent's predeceased wife, petitioner's mother, is also true of items 1, 2, 3 and 5 of the findings under consideration; they were not claimed by nor set aside to the decedent in his wife's estate. Again, if the $1,000 United States Savings Bond, worth at least $750, had been added to the appraised value of $1,861.75 given the estate, it would have exceeded the $2,500 maximum then permissible under section 640. The only shred of evidence that affords any support for the conclusion that any of these various bits of property, now appearing in decedent's estate, were a part of the community property owned by him and his wife at the time of her death is the recital in the inventory and appraisal made in his estate that they were issued during the period of their marriage. This, we consider, under all the circumstances of the case, not so positive proof that we should limit the effect of our reversal of the decree to the one finding respecting the Southern Pacific Company Gold Bonds.

Our expressed conclusion that the finding respecting the Southern Pacific bonds lacks evidentiary support, is not to be read as a conclusion, not expressed, that the findings as to the other items do have such support, nor as precluding the trial court, if the evidence on a new trial warrants, from making a finding, now absent, that some of the decedent's holdings were acquired by the use of proceeds from property that he and his predeceased wife had held as joint tenants.

Our conclusion to reverse the decree generally, and not with directions, is further supported by these words, foreshadowed in the findings, that appear in the Decree: "THE COURT FURTHER FINDS that the following bonds purchased in June 1945, immediately after the termination of his wife's estate, were purchased from the proceeds of the above and community property held:" Taken literally, the decree would mean that the petitioner was entitled to both the property listed under items 1-5, and that listed under items 6 and 7, which was purchased, in part, from the proceeds of the five items. Any way it is to be interpreted, it awards items 6 and 7 to the petitioner, possibly because, as was stated at the hearing, they were purchased as the result of a sale of some of the Southern Pacific Company Gold Bonds.

The decree determining interest in the estate is reversed.

Shinn, P. J., and Ford, J., concurred.